UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                              Case No. **05-12355** (BLS)
                                                    (Dist. of Delaware)
**APCO LIQUIDATING TRUST**
and
**APCO MISSING STOCKHOLDER TRUST**

Debtors

**JOHN G. MCMILLAN, as Liquidating**               Misc. No. **08-102**
**Trustee for the APCO LIQUIDATING**
**TRUST and APCO MISSING STOCKHOLDER**
**TRUST**

Plaintiff

v.

**UNITED STATES OF AMERICA,**
**UNITED STATES GENERAL SERVICES**
**ADMINISTRATION, UNITED STATES**
**ENVIRONMENTAL PROTECTION AGENCY,**
**STATE OF OKLAHOMA and OKLAHOMA**
**DEPARTMENT OF ENVIRONMENTAL QUALITY**

Defendants

### MEMORANDUM OPINION

Plaintiff John G. McMillan, Liquidating Trustee for the Apco Liquidation Trust and Apco Missing Stockholder Trust ("Liquidating Trustee"), petitions to enforce a subpoena he issued to Shaw Environmental, Inc. ("Shaw") in connection with a dispute in the United States Bankruptcy Court for the District of Delaware. The Environmental Protection Agency ("EPA") opposes the petition and resists production of certain documents on the basis of the deliberative process privilege. Although the deliberative process privilege applies to some of the documents the EPA has withheld, the plaintiff's need for the information in the documents outweighs the privilege and so they must be produced.

1

### Facts

The Liquidating Trustee's subpoena relates to claims the Oklahoma Department of Environmental Quality, the EPA and the Oklahoma Attorney General (collectively, "Claimants") filed in the chapter 11 reorganization of debtors Apco Liquidating Trust and Apco Missing Stockholder Trust.  The Liquidating Trustee objected to the claims.

The Claimants are seeking to recover past and future cleanup costs and natural resource damages incurred by the trusts' predecessor, Apco Oil Company, which allegedly disposed of petroleum and hazardous substances on ground in Cyril, Oklahoma, that came to be designated the Oklahoma Refining Company Superfund Site.[1]  Some of the claims include charges for work Shaw Environmental, Inc. ("Shaw") performed at the direction of the EPA and United States Army Corps of Engineers ("USACOE").  Shaw analyzed the site and recommended a cleanup plan to the EPA and USACOE.  The documents the EPA continues to withhold from the Liquidating Trustee comprise Shaw employees' technical drawings, draft documents and email messages relating to its recommendation.

In response to the subpoena, Shaw initially tendered copies of the documents only to the EPA and USACOE.[2]  By agreement of the parties, Shaw later gave the plaintiff copies of most of the requested documents but withheld approximately 188 documents the EPA contended were privileged.[3]  The EPA in time relented and produced all but 85 of the subpoenaed documents for

---

[1] Apco Oil Company was liquidated in 1978 and its assets were placed into the Apco Liquidating Trust.  Apco Liquidating Trust and Apco Missing Stockholder Trust filed chapter 11 in the District of Delaware on August 19, 2005.

[2] Shaw's contract with the USACOE incorporated 48 CFR §252.204-7000, which in relevant part prohibits a contractor with the USACOE from releasing information pertaining to the contract to anyone outside the contractor's organization without prior authorization from the USACOE.

[3] January 29, 2009 Stipulation and Agreed Order (P-15).

which it had claimed the privilege.[4]  Because the court was unable to determine the agency's privilege claim after reviewing the EPA's original privilege log and the supporting affidavit of Lawrence Starfield, Acting Administrator for EPA Region 6, it reviewed the documents and the privilege log *in camera*.[5]

## Law and Analysis

### A. The Deliberative Process Privilege

The deliberative process privilege protects from discovery government documents that are both pre-decisional, that is, generated before an agency policy is adopted, and deliberative, meaning that they contain opinions, recommendations, proposals and other subjective matters. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).  The privilege protects governmental agencies' internal communications that are deliberative in nature but not those that are "purely factual."  *EPA v. Mink*, 410 U.S. 73, 88-89, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973), *superseded by statute on other grounds*.  *See also*, *Skelton v. U.S. Postal Service*, 678 F.2d 35, 38-39 (5th Cir. 1982) ("careful case by case analysis of the material sought is necessary" to determine if the material is deliberative or merely purely or predominantly factual).

The privilege is intended to foster candid communication among government agency personnel concerned that their every remark might become "front page news" or discoverable.  *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9, 121 S.Ct. 1060,

---

[4]  March 5, 2009 Stipulation and Agreed Order (P-26).  On February 25, 2009, the EPA produced to the plaintiff a privilege log that identified only some of the documents it had withheld as privileged.

[5]  June 4, 2009 Reasons and Order, Misc. No. 08-102 (P-41).  As required by the court, the EPA amended Starfield's affidavit and also filed affidavits of two other EPA employees who had worked on the Oklahoma clean-up site, Rita Engblom and Michael Hebert.  The EPA's amended privilege log (P-46) made two things apparent.  First, the EPA had released some of the previously-withheld documents (both with and without redaction) *before* it filed the amended log.  Second, due to a numbering error on the log, actually only 85 documents are at issue, rather than 86 discussed in the parties' memoranda.

1066, 149 L.Ed.2d 87 (2001). It allows a free and open exchange of ideas among government officials to improve agency decision making. *Missouri ex rel. Shorr v. U. S. Army Corps of Eng'rs,* 147 F.3d 708, 710 (8th Cir. 1998).

The privilege also applies to communications of non-government contractors or consultants directly involved with the internal agency decision-making process. *Klamath Water Users Protective Ass'n,* 532 U.S. at 10-11, 121 S.Ct. at 1066. Therefore, because the EPA and USACOE were directing Shaw's work relating to the Oklahoma site remediation when it created the 85 documents under review, the documents may be privileged if the government establishes that the deliberative process privilege applies to them. *Redland Soccer Club, Inc. v. Department of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) (government must make the initial showing that it is entitled to assert the privilege).

### B. Some of the Documents the EPA Withheld are Subject to the Deliberative Process Privilege

The deliberative process privilege applies to some of the documents the EPA withheld, but not to all of them. The documents and parts of documents that are privileged contain Shaw's deliberative and pre-decisional statements and recommendations concerning the proposed remediation of the contaminated site. That information eventually led to the EPA's 2004 decision not to implement Shaw's proposal for remediating the site.

Specifically, the deliberative process privilege applies to the following documents and portions of documents the EPA withheld, listed as they are numbered on the amended privilege log.[6]

---

[6] The page numbers used in this list are the Bates numbers applied to the documents rather than their original page numbers. Where only certain pages of a document are listed as privileged, the remainder of the document is not privileged.

| PRIVILEGE LOG DOCUMENT NO. | PRIVILEGED PAGES | PRIVILEGE LOG DOCUMENT NO. | PRIVILEGED PAGES |
|---|---|---|---|
| 1 | All | 36 | Pages 1390-1405 |
| 2 | All | 37 | Pages 1432-1447 |
| 3 | All | 38 | All |
| 4 | All | 39 | All |
| 5 | All | 40 | All |
| 6 | All | 42 | Page 1696 only |
| 7 | All | 44 | Pages 1726-1732 |
| 8 | All | 46 | Pages 1762-1763 |
| 9 | All | 51 | Pages 1797-1806 |
| 10 | All | 52 | Pages 1833-1848 |
| 11 | All | 53 | Pages 1876-1891 |
| 12 | All | 54 | Pages 1915-1931 |
| 14 | All | 55 | Pages 1960-1977 |
| 16 | Page 219 only | 56 | Pages 2004-2021 |
| 18 | Pages 225-231 | 57 | Pages 2041-2050 |
| 19 | Pages 233-242 | 58 | Page 2136 only |
| 24 | Pages 363-372 | 66 | Pages 2544-2560 |
| 25 | Pages 626-641 | 67 | Pages 2583-2599 |
| 26 | Pages 669-684 | 68 | All |
| 27 | Pages 712-727, 809-822 | 69 | Pages 2744-2759 |
|  |  | 70 | Pages 2764-2769 |
| 28 | Pages 847-862 | 72 | Page 3036-3045 |
| 29 | Pages 962-978 | 74 | Pages 3093-3105 |
| 31 | Pages 1069-1083 | 82 | Pages 3516-3525 |
| 32 | Pages 1111-1126, 1153-1168 | 83 | All |
|  |  | 85 | Page 4263 only |
| 34 | Pages 1333-1342 |  |  |

Other documents the EPA refused to produce to the Liquidating Trustee comprise partial or complete technical drawings, scientific findings and other statements that without doubt are factual and not deliberative. Those documents are not subject to the deliberative process privilege and the EPA must produce them. The documents (including, for ease of reference, those the EPA produced after initially withholding them) are:

| PRIVILEGE LOG DOCUMENT NO. | DISPOSITION | PRIVILEGE LOG DOCUMENT NO. | DISPOSITION |
|---|---|---|---|
| 13 | Not privileged | 20-23 | Previously produced |
| 15 | Previously produced | 30 | Previously produced |
| 17 | Previously produced | 33 | Not privileged |

5

| PRIVILEGE LOG DOCUMENT NO. | DISPOSITION | PRIVILEGE LOG DOCUMENT NO. | DISPOSITION |
|---|---|---|---|
| 35 | Previously produced | 59-65 | Previously produced |
| 41 | Previously produced | 71 | Previously produced |
| 43 | Previously produced | 73 | Previously produced |
| 45 | Not privileged | 75-81 | Previously produced |
| 47-50 | Previously produced | 84 | Not privileged |

**C. Balancing the Trustee's Interests and the Interests of the EPA Weighs in Favor of Producing the Privileged Material**

Merely identifying documents that the EPA properly claimed as privileged does not complete the analysis because balanced against the policy of protecting governmental deliberations is the litigants' interest in "free and open discovery." *FDIC v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998). The deliberative process privilege is not absolute, *Redland*, 55 F.3d at 854, and it does not "protect Government secrecy pure and simple," *Klamath Water Users Protective Ass'n,* 532 U.S. at 8-9, 121 S.Ct. at 1066. Thus, even if material is privileged, the party seeking it through discovery may defeat the privilege claim by showing that the party's need for information outweighs the agency's interest in confidentiality. *In re Subpoena Served Upon Comptroller of Currency, and Secretary of Bd. of Governors of Federal Reserve System,* 967 F.2d 630, 634 (D.C. Cir. 1992) (court must balance the competing interests anew each time the deliberative process privilege is asserted). *See also N.L.R.B. v. Sears*, 421 U.S. at 149, n. 16 ("The ability of a litigant to override a privilege set up by the Government, with respect to an otherwise disclosable document, may itself turn on the extent of the litigant's need in the context of the facts … or the nature of the case.") Accordingly, the Claimants must prove that their need for the documents outweighs the government's interest in not disclosing them. *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

The Third Circuit's *Redland* opinion identified several factors that bear on a court's decision to uphold or override a deliberative process privilege claim:

> 1) the relevance of the evidence sought to be protected;
>
> 2) the availability of other evidence;
>
> 3) the "seriousness" of litigation and issues involved;
>
> 4) the role of the government in the litigation; and
>
> 5) the possibility [that government employees in the future may be made more timid when they are] forced to recognize that their secrets are violable.

*Redland* at 854 (paraphrasing in part).

Three of the *Redland* factors weigh against the EPA's privilege claim. First, the documents are relevant to Shaw's investigation and the process of determining the proper clean-up procedure and therefore to the EPA's and Claimants' claims. Second, the Liquidating Trustee cannot reasonably be expected to challenge those claims without discovery from Shaw and the EPA, absent another source for the same information. No one has suggested that any other source for that information exists. Finally, the substantial amount the Claimants seek for remediating the Oklahoma property supports the conclusion that this is serious litigation.

Next in the analysis is the so-called "chilling" factor. The EPA speculates that producing the documents to the Liquidating Trustee will adversely affect its employees or contractors working on the project. The record, including the EPA affidavits, does not support the contention that production of the documents will discourage free discussion of ideas among government officials, Shaw employees and other contracting parties involved in the remediation.

The final *Redland* factor is the government's role in the litigation, which some courts have recognized as more important than the other factors. "[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over." *F.D.I.C. v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998), quoting *E.E.O.C. v. Citizens Bank and Trust of Maryland*, 117 F.R.D. 366, 366 (D. Md.

7

1987). *See also E.E.O.C. v. Greater Metroplex Interiors, Inc.*, 2009 WL 412934, *2 (N.D. Tex. February 17, 2009) (allowing the deposition of an E.E.O.C. employee because the agency had filed the lawsuit); *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998) (noting that courts have severely restricted the government's use of the deliberative process privilege when the government seeks affirmative relief). Other courts decline to make the government's role the determinative factor in their analysis. *Griffin v. Beard*, 2009 WL 1606891, *9 (E.D. Pa. June 8, 2009) (noting that some courts give great weight to the government's role in the litigation in determining whether the privilege applies, but concluding that the role of the state agency involved was not dispositive because it had not filed the lawsuit); *E.E.O.C. v. Burlington Northern & Santa Fe Railway Co.*, 621 F.Supp.2d 603, 607 (W.D. Tenn. 2009) (weighing all *Redland* factors evenly after declining to apply a "bright line" rule giving government's role greater weight in the analysis). The government "initiated" this dispute by filing a proof of claim – essentially a demand for payment. That fact weighs in favor of overriding the privilege claim, regardless of the weight given to the government's role in this dispute.

In combination, the facts support the conclusion that the Liquidating Trustee's need for the documents outweighs the EPA's interest in withholding them. The EPA filed an unsecured claim for more than $10,400,000[7] in past and future estimated costs of cleaning the Oklahoma Refining Company Superfund Site. The EPA cannot reasonably seek more than $10,000,000 from the estate for remediation based on Shaw's analysis and decline to disclose to the Liquidating Trustee that analysis, which is relevant to the trustee's effort to determine the validity of the EPA's claim. The Liquidating Trustee seeks materials discoverable in litigation by a

---

[7] The Oklahoma Department of Environmental Quality (claim 25) and the Oklahoma Attorney General (claim 28) also filed claims against the debtor for more than $3,000,000 and $6,000,000, respectively. However, neither entity objected to Shaw's production of documents in response to the subpoena.

private plaintiff or a private claimant in a bankruptcy case.  No policy justifies different treatment for the government in this bankruptcy, where a larger distribution on the EPA's claim will reduce the amounts available for distribution to other claimants.  The documents therefore are discoverable in the Apco reorganization claim litigation.

**Conclusion**

Although the EPA properly claimed the deliberative process privilege for 51 of the 85 documents it declined to produce in response to the Liquidating Trustee's subpoena, the Liquidating Trustee's need for these documents outweighs the policies served by the privilege. Accordingly, the EPA must produce the documents to the Liquidating Trustee.

Baton Rouge, Louisiana, December 14, 2009.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE